And that's it. So we now have our first case for argument, which is Urias-Gaxiola v. Blanche. So, counsel, if you'd like to take the bench, I mean, take the podium. Thank you. Thank you, Your Honor. May it please the Court, Siobhan Ayala on behalf of Mr. Demetrio Martin v. Urias-Gaxiola, the petitioner in this case. This case, the petitioner is asking to correct two errors of the courts below. Specifically, substantial evidence does compel a reasonable adjudicator to find that there is exceptional and extremely unusual hardship in this situation. Counsel, we have a lot of these substantial hardship cases. I don't find much of that here. But you do have something else that I'd like you to talk about, which is the so-called unavailable evidence with respect to the visa, or you may have some traction. Yes. Would you take a minute to address that issue, please? Yes, Your Honor. That was the second issue. Should have been the first. Okay. Understood. So Mr. Urias was found credible by the judge at the hearing. And, however, the judge did not let him testify about his entry. He cut off that testimony. Because he had admitted in his response to the notice to appear that he had entered without permission. Exactly, Your Honor. So what's this, what I'm trying to figure out in this case? Just a minute. Was it without permission or without inspection? It was, he conceded the charge of removability that he had violated. He didn't have a valid visa when he entered. Well, that wasn't the charge. The charge was that he entered, as I think, I'm looking, I can pull up the notice to appear, but it was that he had entered without inspection or permission or something. I believe so. It was either 212-A-6-1-A or 212-A-7. I'm not sure which one. Whatever it was, the judge did this based on his response to the notice, right? Yes. Okay. So here's my question. I'm not sure either side has addressed this, but both sides seem to assume that we use the Velazquez case as the measure of what must be shown in order to amend your answer. Or to amend your response. And that involved really some evidence, an actual admission by someone, an interview or something else that it came from. This is just the amendment of a pleading. And there's BIA case law that says when one amends a pleading, at least a notice to appear, it's done sort of on the same basis that Rule 15 allows amendments in a district court when justice should be served. What standard should apply to this attempt to amend the notice? Your Honor, I think... The answer, sorry. Yes. Well, there's in Santiago-Rodriguez v. Holder, there's three circumstances. One is when it would be unjust as a result, which I think applies here. Is that a case in which the answer was sought to be amended? I'm not sure, Your Honor. Well, see, that's what I'm having some difficulty with here. I understand if somebody has, there's an evidentiary issue. Somebody's made an admission, they're interrogated or something, and they say to an officer, yes, these are the facts. And then they later want to get that evidence withdrawn, why there has to be some extraordinary circumstance to do that. But here we're talking about a pleading. And so I'm trying to figure out whether or not any of these cases really deal with amendment of a pleading. Now, let me tell you, it's not a trick question. It's to your benefit if we don't have to do the exceptional circumstances standard. So, but you don't cite any case that really deals with an amendment of a pleading. No, Your Honor. That's why I'm asking. Yes. Can I move slightly to basically a slightly different subject, which is why the petitioner's visa was unavailable evidence? That's the contention here. Why was the visa, in quotes, unavailable? Well, Your Honor, as he talked about in the hearing, he was in Arizona briefly, and then he got arrested. And then he decided to stay here. So his belongings were still in North Carolina.  So after the proceedings were finished, he went back to North Carolina and was looking for the visa through boxes and was able to eventually find it in those boxes. But he knew he had a visa. Right. So why shouldn't, I mean, but nonetheless, the answer said, admitted the charge of removability. Why, that's not newly discovered information. He may not have been able to find the document, but the information was available to him, wasn't it? Right. Well, and that's why he, through counsel, attempted to amend the pleading once it was discovered and with counsel. He also tried to testify to it. Right. And so there's a procedural problem here as well. I mean, that is that he got up on the stand and tried to explain this, and he was not allowed to be, the judge simply said, well, you admitted it. By the way, Santiago Rodriguez was in the admission by the, through the officer in the pleading, as far as I can tell. Do you know, but you don't know that for sure.  In other words, that he was trying to withdraw the admission made by Dominguez on Santiago's behalf in a motion to change venue. It wasn't actually in the response of pleading, but it was in a motion. So, the, the problem is at least partly a procedural problem. The question that Judge Smith asked is about the remand motion, which is a separate problem, right? Right. I mean, basically, he tries three separate times to present his evidence and to correct the record. Once when he tries to amend the pleading, second in court when he tries to testify to it. To those rulings. The question Judge Smith was asking, I think, you'll correct me if I'm wrong, is that in order to successfully bring a motion to remand, you must demonstrate that the information wasn't available to you before. And while the physical visa may not have been available to him, he knew darn well that he'd been admitted on a visa, didn't he? Right. But before then, he had tried to correct that twice through a motion to amend the pleading. And we can deal with whether denial of the motion to amend was error. I think as Judge Berzon asked you, focusing on the motion to remand, you need information that you couldn't have had before in order to be successful in a motion to remand, right? Right. And his argument would be that he physically was not available, was not able to get that copy of the visa. Because part of the... One thing I couldn't understand. Well, there were a couple of things. One of them was that his... One of the things that the BIA concentrated on was that he kept his information about when he actually came with the visa kept changing. Yeah. Right. It was 2003. It was 2004. I don't know. That might be relevant if somebody was actually ruling directly on evidence that he had given, but he actually didn't have a chance to give the evidence. Right. But he did give different information. And secondly, he said in his motion, in one of the motions anyway, that he had attached the visa to his motion to amend, but he didn't. Is that right? Yeah, that's correct. That was a mistake. He didn't attach the copy of the visa because he didn't have it. So it's in the record. When did it first appear in the record? It first appeared on the motion to remand with the BIA. And he did say approximately in his affidavit to the BIA on the motion to remand. I think it could have been resolved best in testimony. I would like to save a couple minutes for rebuttal. Yeah, please do. Okay. Thank you. Let's hear from the government. Okay. Good morning, Your Honor. Good morning. May it please the court. Dietz Lafour on behalf of the respondent. The issue we're discussing here is the border cord regarding the motion to amend. And the notice up here charged the petitioner with illegal admission in 2002. The pleadings admitted and conceded. Wait. Yes, Your Honor. Wait, what admission in 2002? The ISO 13? Is that what you're talking about? So on page 625, I'm referring to the I-213. At the top of page... Well, that wasn't in 2002, was it? It was about 2002. Is that in 2000? Correct. But dovetailing on that, and this is important here. On the top of 625 on that I-213, you'll see the admission where petitioners admitted to entering the United States illegally in 2002. Now, the key... Okay, wait. When was that I-213? The I-213 was in 2017. Right. So he was remembering something from 15 years ago. But that's not the key issue. The key issue is the petitioner did not object to the contents or the admission to that on page 136 of the AR. Why that's important? Because if the court looks to its decision from about three weeks ago, which the government issued, submitted a 28-J on, Lopez... Which is a non-presidential opinion, right? It's non-presidential, but it's the perfect guidepost. To addressing this particular issue. Because in that case, the I-213 was admitted and it wasn't rebutted. But he tried to rebut it. He filed a motion to amend and then he got up on the stand and he tried to explain it and he wasn't allowed to. We don't have any jurisprudence to support that, Your Honor. We have jurisprudence... Well, we don't have any jurisprudence one way or the other. Isn't that more accurate? No, Your Honor. So you have a case in which somebody tried to get on the stand and explain a prior admission and the court said, I won't let you? The Respondent's contention... Do you have a case? I'm sorry, repeat the question, Your Honor. Do you have a case in which the Respondent tried to get on the stand to explain a prior admission, whether in a pleading or otherwise, and the court said, sorry, I won't hear you? Judge Hurwitz, we don't, but because...  What about Velazquez? Well, in the government's contention... How do you square Velazquez with the fact that the Petitioner attempted to explain, testify, his allegedly incorrect admission or concession? Doesn't Velazquez kind of square that? It, in a way, yes. But the Respondent's contention is that's irrelevant because the matter was foreclosed on page 1383 at the time when counsel was asked by the IJ, do you object to the contents and admissions of the 213? And it was unequivocally answered, no, Your Honor, there is no objection. Isn't Velazquez slightly different? Velazquez, he wants to withdraw the previous admission. And the court says, I'm not going to let you because you haven't shown extraordinary circumstances. And then it relies on that admission to rule against him. Here, his contention is, even if you're not going to let me withdraw, why can't I explain why the previous admission was mistaken? Well, I guess to put it into context, there's three elements that need to be satisfied using a border card for legal entry. One, possessing the border card. We're missing each other here. You established a prima facie case, no doubt. All the elements were established. The question he poses is a slightly different one. In trying to rebut one of the elements, I wanted to point out that the admission that I made in my, either in signing the I-213 or in my answer, was mistaken. And I would like to explain why. And the judge says, sorry, can't do that. Because he never tried to figure out whether that comports with due process. Well, it does, because on page 27 of the record, he submitted an affidavit. What is a motion to remand? And he says he has the burden of proving all the elements of- That's the remand. That's the remand. We're not talking about the remand now. We're talking about what happened at the original proceeding, where he got off and- But that issue didn't come up in the original proceeding because he didn't have the border card. He didn't have the border card, Your Honor. What's the difference if he didn't have the border card? Because that goes back to what I was explaining to the court. There's three elements for lawful admission with the border card. One, you have to possess the border card. Two, you need to present it to a border agent. And three, you need to do so at a lawful port of entry. The second and third element was not satisfied. It's petitioner's burden to submit evidence that all three elements were satisfied. He was trying to submit evidence by testifying. Testifying won't do it if he stood up and- I mean, you could disbelieve it, but he could stand up and- Excuse me. I'm sorry, Your Honor. As I understand it, of course, he never got a chance to do it. But it appears that what he was going to do was say, I did have a border card. I went through the right place. They didn't look at it. And because they didn't look at it, I assumed I wasn't inspected. And that's why I answered it that way. Now, it certainly happens that people go through and nobody ever looks at it. So that seems to be his story, which he never had a chance to give. Now, the IJJ could say, I don't believe it. He could say, the I-213 supersedes that. I believe the I-213. Or he could say, you're not credible. Or he could say, you know, he could have ruled on it, but he didn't rule on it because he never let him say it. That issue was not right, though, Your Honor. That's the thing that we're missing here. At his merits hearing, he didn't have the border card. Well, we never-  We only know that because he later filed a motion to remand. All we know is that the merits hearing, when he tried to testify about what he said was his method of entry, the IJJ said, not going to hear it. Not going to hear it. It didn't say, show me the card. Didn't say anything else. The IJJ said, sorry, I'm not going to let you testify about that because you've admitted to your method of hearing. Judge Hurwitz, I'm not tracking that in the record at all. Tell me where- Let's go to the part of the record where the IJJ says, I'm not going to let you testify on that. Because it wasn't an issue at the merits hearing that I'm- that the government's aware of. What we're tracking- But he filed a motion to amend the pleadings. With the board. No, with the IJJ. I'm sorry, Your Honor. The IJJ, he filed a motion. I understand. I understand. Yes, we're talking past- My apologies. My apologies. So in that particular case, what we're dealing with is we're- The petitioner is, as counsel pointed out, finds the border card in the box years later, waives it, and says, I want to amend. I, I, I'm- He said originally- He said originally, I want to amend. He said before the hearing, he filed a motion to amend the pleadings. What we're looking at, Your Honor, is a- I think I understand better what you're seeing here. The IJJ focused in on the 213. And the 213 was- No, he didn't. No, he didn't, actually. He said to the lawyer that you have omitted this, the lawyer, and he's bound by- And I'm not going to hear it. That's what he said. Bound by the, bound by the omission in the pleadings. That's right. I think we're missing each other here. So I want to be clear. I want to get your best answer to the question I thought I was asking. And I think the one that I think Judge Berzon is asking, too. Let's assume the motion to remand was properly denied because he could have much earlier at least brought to the attention of the Court that he had a visa. And apparently he does, because we look at the one in the record. My question is, when he asked to amend the complaint, his answer, and the judge said, I'm not going to let you do that, why was that correct? Because he didn't have a border card at the time. Well, the judge didn't know he didn't have a border card. The judge just said, you've admitted I'm not going to let you. If the judge had said, I'll let you amend your answer if you show me the border card, and then it said you don't have one, I'm therefore going to deny it. But the judge never went to the end. It went past the first level. Judge just said, you've admitted it. I'm not going to let you change it. Because, Judge Hurwitz, it's a distinction without a difference. Whether you look at the concession in the pleadings, the I-213, or the fact that there is no border card. What's happening here is, if a petitioner says, I entered, I want to amend because I entered with my border card, you're still, as I said, what's very important here is evidence that shows that you showed it to a border agent. I think what you're arguing is that, in retrospect, there's no prejudice. But that's not the basis on which the IJ denied the motion. And unfortunately, we can only uphold the agency on the grounds that it stated. So that's why I'm asking the question. I see, Your Honor. I'm out of time.  Yeah. Do either of my colleagues have additional questions? We could go on for a long time, of course. Yes, Your Honor. Any additional questions? No. I hope I apologize, Your Honor, about my misunderstood. Did I at least somewhat clarify it? Well, I understand that he, in fact, as it turns out, apparently didn't have the border card at the point, at that point. But he could have explained that, too. I mean, I don't know where it is, but I certainly had one. And I don't, this idea that you have to actually present it to a border agent, I assume that means if they ask for it. But, I mean, certainly I, in the old days, went through borders without anybody asking for it. I assume if you go through in the right place and they don't ask for it, that's not a problem. May I briefly? Very briefly, yeah. Yeah, it's similar to driver's license. We have one, it permits us to drive a car. But if we leave it at home, we get pulled over by a cop for not having it, we still get ticketing. Possessing the car doesn't... If they ask for it. But if he's driving through the border, his story, as I understand it, I drove through the correct border entry and nobody actually asked to see my border card, so I didn't show it to them. And I presume that doesn't make him an illegal entry. It does. Possessing the card does not permit you to walk across the border. But when you do present it at the lawful port of entry, it passes through a machine that records and it records... Yeah, in 2003 or 4, when he did it, I don't know whether it's true or not. My understanding, it was in place at that point. And it would be petitioner's burden to submit that evidence.  Based on that... You're right, and he never had the chance. That's the problem. Very well. Thank you very much. We have a little bit of rebuttal time. Thank you, Your Honor. I just want to briefly say that that is what the court is describing is actually how people do often or have often entered in the past without swiping their border card through any specific computer. The BIA and matter Key Lawton, and I'll file a 28-J letter, but the respondent or the petitioner can establish through testimony their entry and that it can be considered to be a lawful entry. So I think what is at stake here is a due process challenge. And we just ask the court to revamp based on that. Thank you. Very well. Any additional questions about my colleague? All right. Thank you very much. The case of Urias-Cacchiola v. Blanche is submitted.
judges: BERZON, SMITH, HURWITZ